## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
**PAULINE McDONOUGH,**                  )
                                        )
         **Plaintiff,**                 )
                                        )        **Civil Action No.**
    **v.**                              )        **14-13674-FDS**
                                        )
**CBRE, INC. and A&A**                  )
**MAINTENANCE ENTERPRISE, INC.**        )
                                        )
         **Defendants.**                )
_____)

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an action in negligence arising out of a slip-and-fall incident.  Jurisdiction is based on diversity of citizenship.

On May 7, 2012, plaintiff Pauline McDonough fell while walking on a tile floor in a building managed by defendant CBRE, Inc.  Defendant A&A Maintenance Enterprises, Inc. served as CBRE's janitorial subcontractor.  The amended complaint alleges that defendants' negligence, specifically their negligent waxing of the floor, caused McDonough to fall and suffer injuries.  Defendants have moved for summary judgment.

For the following reasons, defendants' motions for summary judgment will be denied.

## I.    Background

The following facts are either undisputed or drawn in the light most favorable to McDonough, the non-moving party.

A.     **Factual Background**

Pauline McDonough resides in Massachusetts.  (Notice of Removal 2).  CBRE, Inc. is a

Delaware Corporation with its principal place of business in California.  (*Id.*).  A&A

Maintenance Enterprises, Inc. is a New York Corporation with its principal place of business in

New York.  (*Id.*).  Siemens Healthcare, not a party to this case, owns the building where

McDonough fell.  (A&A SMF ¶ 1).  CBRE managed the Siemens building and hired A&A to

clean it.  (*Id.* at ¶¶ 4-5).

On Monday, May 7, 2012, McDonough arrived at the building to receive a vaccination.

(McDonough Dep. 42:19-23).  It appears that McDonough was a Siemens employee at the time,

although she worked in a different building.  (*Id.* at 12:5-7).  Early in the afternoon, McDonough

slipped and fell on the tile floor in the hall leading to the nurse's office.  (Am. Compl. ¶ 5).  As a

result, she sustained a radial head fracture, multiple fractures to her right arm, sprains to her right

ankle and foot, and thigh pain.  (*Id.* at ¶ 7).

McDonough testified at her deposition that at the time of her fall, she was not aware of

what caused her to slip, and that she did not notice anything unusual about the floor while she

was walking.  (McDonough Dep. 60:21-25).  According to her, the floor did not seem slippery

while she was walking before her fall, and it did not seem to be in a different condition than it

was on earlier occasions that she had walked in the building.  (*Id.* at 60:21-61:2; 62:2-4).  She

did not see any liquids, wax, or warning signs on the floor.  (*Id.* at 86:17-25).  However, after

slipping, McDonough concluded that there was wax on the floor that caused her heel to slip.  (*Id.*

at 86:9-22).

Two Siemens employees, Gary Walsh and Nancy Malloy, came to McDonough's aid

while she was lying on the floor.  Neither Walsh nor Malloy saw any wet or slippery substances

2

on the floor.  (Malloy Dep. 23:11-20; Walsh Dep. 37:10-14).  Malloy concluded that McDonough's fall "could be associated with the type of shoes she was wearing, (small, vinyl heels), and the cleanliness of the floor."  (Malloy Dep. 75:3-22).

After McDonough was taken away in an ambulance and CBRE was notified of the incident over the radio, Walsh saw an A&A employee, Santos Crispin Esteben, clean up McDonough's blood and disinfect the area.  (Walsh Dep. 31:10-34:13).  The day after McDonough's fall, Walsh noticed "some slick spots" in the same hallway, and instructed CBRE to have the floor refinished.  (*Id.* at 56:13-24).  Defendants contend that they were not notified of McDonough's fall until she filed suit.  (A&A SMF ¶ 16).

Pursuant to its contract with CBRE, A&A "was contracted to scrub and rewax the tile floors quarterly, as well as, sweep and wash all hard floors daily."  (*Id.* at ¶ 6).  Waxing generally occurred over the weekend, so as not to disrupt the work in the building, and it could take several weeks to complete the waxing process in the entire building.  (*Id.* at ¶ 17; Romero Dep. 42:18-44:12).  Neither A&A nor CBRE have records of when the floors were last waxed before McDonough's fall.  (A&A SMF ¶¶ 19-20).  A&A did not regularly clean the floors during the day.  (Romero Dep. 34:14-22).  According to A&A's regional branch manager, at the time that McDonough fell, A&A janitors applied wax to the floor by placing the wax in a bucket and using a flat mop to apply it.  (*Id.* at 47:1-6).  After applying the wax, janitors would inspect the floor to make sure that it "look[ed] good," but they did not walk the floor to determine whether it was slippery.  (*Id.* at 51:8-22).

The building's records indicate that at least four other people fell on tile floors in the building—absent water or some other visible cause—from 2009 until the date McDonough fell,

and at least four people have fallen since the date of her fall.  (A&A Ex. 5 ¶¶ 9, 18, 28, 34, 36, 38, 39, 43).

During discovery, CBRE produced a September 2012 document titled "ACORD, General Liability Notice of Occurrence/Claim."  (A&A Ex. 4).  That document, which appears to be a submission by defendants to an insurance company, described the incident as "Claimant (Siem[e]ns employee) slipped and fell due to a slippery floor due to insured's maintenance at Siem[e]ns."  (*Id.*).

## B.   Procedural Background

On July 17, 2014, McDonough filed the original complaint in this case in Norfolk Superior Court.  After defendants removed the action to this Court, McDonough amended her complaint in September 2015.  The amended complaint asserts claims for negligence against CBRE and A&A.  Both defendants have moved for summary judgment.

## II.   Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant,

drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir.

2009).  When "a properly supported motion for summary judgment is made, the adverse party

must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks omitted).  The non-moving party

may not simply "rest upon mere allegation or denials of his pleading," but instead must "present

affirmative evidence." *Id*. at 256-57.

## III.    **Analysis**

The amended complaint alleges that defendants "failed to maintain the floor area in a

reasonably prudent manner, as it was over-waxed and/or slippery," and "as a direct and

proximate result of the defendant[s'] negligence, Pauline McDonough was caused to slip and

fall." (Am. Compl. ¶¶ 9-10, 15-16).

"To prevail on a negligence claim, a plaintiff must prove that the defendant owed the

plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted,

and that there was a causal relation between the breach of the duty and the damage." *Cracchiolo*

*v. Eastern Fisheries, Inc.*, 740 F.3d 64, 69 (1st Cir. 2014) (quoting *Jupin v. Kask*, 447 Mass. 141,

145 (2006)).  In cases involving premises liability, a plaintiff can establish a breach of the duty to

maintain the premises by showing that there was a "dangerous condition" which:  (1) defendant

(a) caused, (b) had actual knowledge of, or (c) reasonably should have been aware of; and

(2) defendant did not correct.  *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 397 (1st

Cir. 2012) (quoting *Sheehan v. Roche Bros. Supermarkets, Inc.*, 448 Mass. 780, 783 (2007)).

Defendants point to two reasons why their motions for summary judgment should be

granted.  First, both defendants contend that McDonough has failed to introduce any material

evidence, beyond mere speculation, that there was a dangerous condition on the floor—

specifically, negligent waxing—that caused McDonough to fall.  Second, they contend that even if there was a dangerous condition, there is no evidence in the record that defendants caused it, or had actual or constructive knowledge of it.

Beginning with defendants' latter contention, and assuming that the wax on the floor was a dangerous condition, it cannot seriously be disputed that A&A caused the condition.  A&A, as part of its contract for janitorial services with CBRE, agreed to wax the Siemens floor on a quarterly basis.  If the wax was negligently applied, the dangerous condition was necessarily caused by A&A.  By extension, CBRE, at the very least, reasonably should have been aware that the wax created a dangerous condition because of the numerous other falls that occurred without some identifiable cause, such as water or other liquid.

However, to survive summary judgment, McDonough must also point to at least some evidence in the record from which a reasonable factfinder could conclude that there was a dangerous condition.  Whether she has met that minimum burden is a much closer question.  McDonough's after-the-fact justification for her fall—that the floor must have been slippery due to over-waxing—is speculation and will not be credited, especially in light of the fact that she did not notice anything out of the ordinary about the floor before her fall.

Accordingly, the evidence in the record suggesting that the wax created a dangerous condition appears to be that (1) at least eight people fell on the tile floors from 2009 to 2015 without a recorded identifiable cause; (2) the fall occurred on a Monday, and the floors were normally waxed over the weekend; (3) the day after McDonough fell, Walsh noted that there appeared to be some "slick" spots on the floor near where she fell, and he requested that CBRE refinish the area; (4) Malloy concluded that the fall "could be associated," at least in part, with the "cleanliness of the floor"; and (5) the ACORD form, which at least one of the defendants

created, states that McDonough "slipped and fell due to a slippery floor due to insured's maintenance at Siem[e]ns."

Viewing that evidence in the light most favorable to McDonough and drawing all reasonable inferences on her behalf, it is at least possible—if barely so—that a reasonable factfinder could conclude that the wax on the floor was a dangerous condition. It is also possible that a reasonable factfinder could conclude that the wax was the cause of McDonough's fall. Accordingly, whether defendants' waxing of the floor created a dangerous condition and caused McDonough's fall depends on disputed facts that are properly left for a jury to determine during trial.

## IV.    <u>Conclusion</u>

For the foregoing reasons, defendants' motions for summary judgment are DENIED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  May 4, 2016

7